TUCKER, Judge.
The first point insisted on for the appellants was, that Staples had a right to the 2000 acres of land, as founded on the entry made by him upon the 13th of November, 1792. And, in support of this position, it was said, that the act of 1791, ch. 4, having expired on the 7th of November in that -year, and that of 1792, ch. 7, which was on the 15th, relating only to the day of its passing, an entry made on the 13th, was valid. This is admitted, supposing that there was no prior claim upon the land, which had not been discussed in any judicial controversy. But where such claim remain undiscussed, the forms of law must be observed, before the *953 validity of the claim depending upon vested rights, which might possibly have become liable to forfeiture, could be pronounced upon. The forms prescribed by our act concerning grants of land, May 1779, ch. 13, are the proceedings, "by way of caveat. Staples being apprized of Webster’s claims, (which he' had himself been employed to carry into effect,} ought to have entered a caveat in the manner prescribed by law, that the fact might be established, whether Webster’s inchoate rights had, through neglect, become absolutely and irredeemably forfeited, *or not? and he ought, moreover, to have suggested his own rights, founded upon his entry, made after Webster’s supposed forfeiture had been incurred. This was the regular course prescribed by the act under which both parties must claim; and the object of that course of proceeding is to establish any controverted question, which of the contending parties has the better title to obtain from the register,’as agent of the commonwealth, a patent, which would be complete evidence of a legal title to the lands against all persons whatsoever, provided the party obtaininig it shall have complied with all the requisites of the law. One of which was, that when any prior, inchoate right or claim did in fact exist, the subsequent claimant should call upon such claimant, by a regular caveat, to shew cause why it should not be vacated by the judgment of a court having competent jurisdiction, and the claim of the caveator preferred to his? If this process were neglected, the register, for whose information and government the proceedings upon the caveat were required, might issue patents to both, (all other requisites of the law being complied with,) without enquiring or regarding whether their respective claims interfered with each other or not: and it was the folly of the person having the subsequent, but more valid claim to a patent; if, by omitting to file his caveat, he permitted the elder claim, which might have been avoided by a caveat, to be established by an elder patent. Thus, if the plat of survey of the elder claim was not made according to law, or his plat were not returned to the register’s office, within the time prescribed by law, his claim was voidable by a caveat. But if no caveat were entered, and the register had made out a patent, no objection to the patent could af-terwards be made, whatever irregularity there might have been in the survey, or laches in returning it. The proceeding by caveat may be compared to a bill of inter-pleader: The register, as the officer of the commonwealth, withholding any grant for the lands, until the parties to the caveat have discussed their several claims before a court, and a judgment on those claims be pronounced. 1 Wash. 40. If these ideas be ^correct, Staples, having omitted to enter a caveat, is no longer entitled to avail himself of any legal advantage, of which he might have availed himself by that course of proceeding. And even by that course he must have shewn a superior legal right to that of Webster, upon the trial of the caveat, or the court must have given judgment for Webster; the effect of which would have been at grant for the lands to him, unless a new caveat, founded upon a better right than his, should afterwards be prosecuted with effect. Field v. Culbreath, 2 Call, 547.
These lands lying upon the eastern waters of the commonwealth, could only be taken up by persons entitling themselves thereto, according to the directions of the act of 178S, ch. 42. After which, no warrant could be granted for lands on the eastern waters of the commonwealth, but upon payment of £2S per hundred acres, instead of two dollars, the price of lands on the western waters. Staples’s warrant bears date October 4th, 1792. It is true, it is an exchange warrant, and might have been a legal warrant on which to ground his entry. But he must, upon the trial of the caveat, have shewn that it was such, or otherwise Webster must have bad judgment in his favour. Coming into a court of equity, after having neglected (perhaps wilfully) to pursue his remedy given by the statute, he must make out a complete title in equity, not oniy against Webster, but against the commonwealth, whom he charges Webster, expressly, with an intention to defraud. His patent is not in the form prescribed by law; nor does it shew, that his warrant was such a one as entitled him to locate upon lands on the eastern waters. Whether his patent, not being in the form prescribed by law, which requires the consideration to be therein expressed, (1779, ch. 13,) is absolutely void at law, is a question upon which I am not prepared to decide at present; but a plaintiff in equity, I conceive, is bound to shew that there is no latent equity against himself: otherwise the court will leave him where it finds him. And since his patent is not in due form, nor expresses the consideration *upon which the grant was made; nor is that consideration clearly shewn on the part of the plaintiff, but, for aught that appears to the contrary, might not have been such as the law required, the court, I apprehend, will not aid him against another person, who has obtained a legal right, and whose equity is not only prior, but may be stronger.
There is another point of view on which I shall just mention that this question may be considered. A court of equity professes to relieve against a forfeiture incurred at law, where compensation can be made. The commonwealth, by the act of the 15th of November, 1792, ch. 7, released her claim to the forfeiture, which Webster might have incurred by not returning the plat. His equity against the commonwealth was restored and kept alive bj that act. If Staples, in the intermediate time between the expiration of the former, and the passing of the latter act, acquired a legal inchoate right to take advantage of Webster’s forfeiture, he ought to have pursued his remedy at law, by caveat; but not having done so, equity will not enforce Webster’s forfeiture; for that would be assuming the power of enforcing, instead of relieving against a penalty.
But let it be admitted, that Staples’s patent was strictly in conformity to the directions of the law, and that he had paid *954 the consideration of ,£25 per hundred acres, required by the act of 1785, yet his equity would not be stronger than that of Webster: and were there no priority on the side of Webster, as there certainly was, equity would, I conceive, leave the parties precisely in the same situation in which the law and their own conduct had placed them.
2. I shall next consider the third objection to the chancellor’s decree, insisted on by the appellants. That Webster illegally and improperly obtained a patent prior in date to that of Staples: which objection seems founded principally upon that part of the bill, which charges Webster with a fraudulent design in entering his caveats, without any intention of prosecuting them.
*Webster conceiving that he had a prior, and better, title to a patent for the lands than Staples had,, had a right, under the law, to enter a caveat against any interfering claim, whether prior, or subsequent, to his own. Staples, if he thought proper, might have availed himself at law, of the dismission, or failure to prosecute the caveat. He did not; nor was there any moral obligation on Webster not to renew his caveat, as often as he pleased. The priority which he gained in his patents by entering those caveats, was no fraud against Staples; but imputable to Staples’s neglect to enter a cross caveat; or rather to his neglect in not entering a caveat against Webster’s title to a patent, as soon as he had made his own entry. His counsel were mistaken in saying he could not enter a caveat until his survey was returned. He might have entered it the moment after he had entered for the lands; and I have already shewn that, if by neglecting so to do, he has lost his legal inchoate right to a forfeiture, a court of equity will not enforce that forfeiture for him.
3. I shall make very few remarks upon the second point, insisted on by the appellants, which I have chosen to consider last.
The whole tissue of the evidence in this cause confirms me in the opinion that Staples, from first to last, ought to be regarded as Webster’s agent. To the last moment, when he was meditating a most unconscientious and fraudulent advantage of his principal, he was consulted, and gave advice in that character. The neglect to return the plats in due time, appears to be fairly imputable to him; for, although the survey was made in June 1790, under his eye, he seemed never to have given himself any trouble about the business; but refused paying the surveyor his fees, although it is in proof that Webster left money with him for that purpose. Webster having been pursued by the surveyor, who dispaired of getting his fees from Staples, went to his house to deliver the plats to him, in company with Scott; but, not finding him, delivered the plats to Scott. This is what so much stress has been laid upon in the argument. But surely *it did not discharge Staples from his reponsi-bility to Webster; especially as the plat appears to have been defective. Staples’s agency, I conceive, extended to every thing necessary to be done to complete Webster’s title. His conduct, both in appearance and in fact, was a palpable fraud upon his employer. I am therefore of opinion that the chancellor’s decree of dismission ought, upon every ground, to be affirmed.
ROANE, Judge.
In the view I have taken of this subject, I do not deem it at all necessary to enter into the legal title of the land in question. The appellant comes to demand the aid of this court to set aside that legal title, and decree him the land. This application can only be sustained on the ground of his superior equity. It is an universal rule that he who asks for equity must do equity; or, more strongly, must not have done iniquity. I hold it also to be a rule that in applications of this kind, which go to the discretion of the court under all the circumstances of the case, the conduct of the party applying, in relation to the subject in question, must appear to have been fair and pure. If it has been of a contrary cast, and much more if it were fraudulent, he comes with a bad grace into a court of equity.
In the case before us, the evidence does not seem to me satisfactory that the appellant was the agent of the appellee’s testator, for the purpose of completing his title, by returning the papers into the land office and taking out the patent: But this I hinge upon, that he suffered himself to be consulted as such agent, and advised the very course which produced the lapse, and enabled him to make the entry. It may have been the weight of this advice, from a person supposed to stand in that relation to the testator of the appellee, which determined Mr. Scott to purchase new warrants, instead of then returning the works, and taking out a patent. The appellant further followed up his advice by furnishing Scott with a land warrant, thus enabling him to make a new entry. Is it conscientious and just for a *man admitting, by not denying, himself to be the friend and agent of another, to advise and assist in effecting a faulty course of proceeding, and then to step in and avail himself of the defect to his own emolument? To avail himself of the knowledge of a fact, to wit: the non-return of the survey, which was communicated to him in a confidential manner, and in character not disavowed by him, viz. as agent of the other party? Would not this be sanctioning unfair, if not iniquitous conduct, and enabling a man to take the benefit of his own wrong? I am sure a court of equitj will not be aiding to abet a procedure of this kind.
Thus stands the case "upon the original conduct of the appellant, and if his subsequent entry had even been made without circumstances indicating trick or unfairness; the result is, however, much corroborated by the circumstances which actually attended the making of the entry. I throw out of my view all the testimony on this point referred to in Beaver’s deposition, and that mentioned in Scott’s as derived from the information of John Davis. But yet there is enough to impeach the integrity of that transaction. The hurry and unfairness with which his entry was made, when he had gone in company with *955 the agent of his friend, a stranger to the surveyor, and most probably had lulled him into a belief of perfect security on the subject of the entry, by his professions and conversation, is alone strongly indicative of trick and contrivance. But this is not all, he afterwards owned to Mr. Scott that he had taken the advantage of Mr. Webster, and endeavoured to excuse himself therefor.
This expression of having taken the advantage is strongly descriptive of the real character of the whole transaction upon his part, and that character imperiously forbids us to sustain his pretensions in the present instance. I am therefore for affirming the decree.
RLiSMING, Judge.
It is unnecessary to go over the ground alreadj taken by the judges who preceded me: and I shall ^'content myself with observing that he who comes into a court of equit3 for relief must prove fraud in the defendant, and uprightness in his own conduct: But Staples shews neither; and therefore I am for affirming the decree.
CARRINGTON, Judge.
It is unnecessary to consider the conduct of Staples in these transactions; because it is clear that Webster has at least equal equity; and he has the legal title besides. Therefore I concur that the decree ought to be affirmed.
Decree affirmed.